
A.

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS ("Agreement") is entered into by and between HAL YAEGER ("Yaeger") and SIGNAL LAKE MANAGEMENT, LLC, SIGNAL LAKE GENERAL PARTNER LLC, BARTON STUCK, and MARK ANTHONY OWENBY (Signal Lake Management, LLC, Signal Lake General Partner LLC, Barton Stuck, and Mark Anthony Owenby are referred to as the "Signal Lake Parties"), on the date set forth in the signature lines below.

WHEREAS, Yaeger claims that he rendered certain services to the Signal Lake Parties; and

WHEREAS, Yaeger filed a lawsuit in the Lake County Court of Common Pleas, known as *Hal Yaeger v. Signal Lake Management, LLC*, Case No. 14CV000275 (the "Lake County Lawsuit") in which Yaeger obtained a judgment on April 15, 2014 in the amount of $175,000.00 plus interest at the rate of 5% per month from August 22, 2013 plus court costs; and

WHEREAS, Yaeger filed a lawsuit in the United States District Court, Northern District of Ohio, Eastern Division, against Barton W. Stuck, Mark Anthony Owenby, Signal Lake Management, LLC and Signal Lake General Partner LLC, known as *Hal Yaeger v. Signal Lake Management, LLC, et al.*, in which he asserts certain claims against the Signal Lake Parties; and

WHEREAS, Owenby filed a Motion to Dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted; and

WHEREAS, Signal Lake Management, LLC, Signal Lake General Partner LLC, and Barton W. Stuck filed a Motion to Dismiss for failure to state a claim upon which relief can be granted; and

WHEREAS, the United States District Court granted the Motions and dismissed the case without prejudice; and

WHEREAS, Yaeger refiled his Complaint in the United States District Court, Northern District of Ohio, Eastern Division, known as *Hal Yaeger v. Signal Lake Management, LLC, et al.*, Case No. 5:16-cv-02407-CAB (the "2016 Lawsuit"). Yaeger subsequently filed an Amended Complaint in the 2016 Lawsuit in which he makes various allegations against the Signal Lake Parties, including allegations of Breach of Contract, Unjust Enrichment, Promissory Estoppel, Fraud, violation of the Fair Labor Standards Act, 29 U.S.C. §201 et seq., violations of the Ohio Minimum Wage Act, and violation of the Ohio Prompt Pay Act, Alter Ego allegations of liability, and claims of Fraudulent Conveyance; and



WHEREAS, the Signal Lake Parties deny the allegations in the 2016 Lawsuit; and

WHEREAS, the parties agree that there is a bona fide dispute regarding the allegations in the 2016 Lawsuit, including, without limitation, whether Yaeger was an employee, whether Yaeger was covered by the Fair Labor Standards Act, and whether Yaeger was due any compensation under any theory of recovery; and

WHEREAS, the parties desire to settle fully and finally any and all differences and claims which exist or may exist between them, including satisfaction of the judgment in the Lake County Lawsuit, and settlement of claims in the 2016 Lawsuit.

NOW THEREFORE, for good and valuable consideration, the receipt, adequacy, and sufficiency of which are acknowledged, the parties agree:

1. Yaeger has dismissed Mark Anthony Owenby from Case No. 5:16-cv-02407-CAB with prejudice.

2. Yaeger and the Signal Lake Parties desire to satisfy the Lake County Lawsuit and settle all of Yaeger's claims alleged in the 2016 Lawsuit under the Fair Labor Standards Act, Ohio's Minimum Wage Standards Act, the Minimum Wage Amendment to Ohio's Constitution, the Ohio Prompt Pay Statute, other applicable state minimum wage and overtime laws, claims for breach of contract, unjust enrichment, promissory estoppel, fraud, alter ego, fraudulent conveyance, and any and all claims and disputes known, and unknown, that exist or might be claimed to exist by and between Yaeger and the Signal Lake Parties, including, but not limited to, claims of any nature that have been or could been asserted that arise out of or relate to Yaeger's business relationship with the Signal Lake Parties.

3. <u>Settlement Payment to Yaeger.</u> Signal Lake Management, LLC, Signal Lake General Partner LLC, and Barton W. Stuck shall pay to Yaeger , payable in the following manner:

(a) To Hal Yaeger a check in the amount of

(b) To the Spitz Law Firm in the amount of $ ____ as compensation for attorney's fees and costs;

(c) An IRS Form 1099-MISC shall be issued to Yaeger, the Spitz Law Firm, and the relevant taxing authorities in relationship to such payments. Yaeger and the Spitz Law Firm will each provide a signed W-9 form to counsel for the Signal Lake Parties prior to issuance of the payments described above.

4. The settlement payment will be paid within thirty (30) days of the date on which an Order approving the settlement is filed or the expiration of the seven (7) day revocation period specified in Paragraph 26 Agreement, whichever is later.

5. The parties agree that the sums paid to Yaeger's counsel shall cover all attorney's fees, costs, and expenses incurred by Yaeger in this matter. Yaeger shall not make any claim to a Court for reimbursement of costs, expenses, or attorney's fees incurred in the lawsuits referenced above, including, without limitation, under the Fair Labor Standards Act, the Ohio Minimum Wage Act, the Ohio Prompt Pay Act, or any other federal or state statute or rule. Yaeger agrees not to make any claim for reimbursement of costs, expenses, or attorney's fees incurred in the 2016 Lawsuit. The 2016 Lawsuit will be settled and dismissed with prejudice, each party to bear its own costs and expenses (including attorney's fees).

6. Satisfaction of Judgment. Yaeger will execute the Satisfaction of Judgment, the form of which is attached as Exhibit "A." Signal Lake Management, LLC is authorized to file the Satisfaction of Judgment upon payment of the sums specified in Paragraph 3, above.

7. No Consideration Absent Execution of this Agreement. Yaeger understands and agrees that he would not receive the monies and/or benefits specified in Paragraph 3 except for dismissal with prejudice of the 2016 Lawsuit and approval of the settlement by United States District Court, his timely execution of this Agreement, satisfaction of the Lake County Lawsuit, and his fulfillment of the promises and commitments contained in this Agreement.

8. Taxation and Indemnities. Yaeger acknowledges and agrees that the settlement amounts described in Paragraph 3 of this Agreement are being provided to settle and resolve disputed legal claims relating to Yaeger's claimed business relationship with the Signal Lake Parties. Yaeger acknowledges and agrees that he is solely responsible for any and all federal, state, and/or local income tax and/or other tax liabilities, responsibilities, obligations, or consequences which are or may become due and payable in connection with the settlement amount being provided under this Agreement. Yaeger understands that he can and should consult with his financial advisor(s) and/or contact counsel regarding the subject. Yaeger affirms that neither the Signal Lake Parties nor their legal counsel make any representations or warranties whatsoever concerning the potential tax obligations, responsibilities, liabilities, and/or consequences associated with the settlement amount being provided under this Agreement. Yaeger is not aware of any liens and/or pending legal claims applicable to the settlement amount. Yaeger agrees to indemnify and hold the Signal Lake Parties and the Released Parties (as defined in Paragraph 9 of this Agreement) harmless from and against any and all tax liabilities, obligations, responsibilities (including withholdings), or other tax consequences including, without limitation, any and all penalties, interest, and other costs that may be imposed by the Internal Revenue Service or other governmental agencies regarding the settlement amount provided under this Agreement. Yaeger further acknowledges that he is solely responsible for all taxes, interest, and penalties incurred by the Signal Lake Parties and/or the Released Parties should they be forced to defend the legal characterization of this settlement amount to Yaeger.

9. **Release of Claims and Non-Interference with Governmental Agencies.**

(a) For valuable consideration, the receipt and adequacy of which is hereby acknowledged, and except as specifically provided in Paragraph 9(c), below, Yaeger, on behalf of himself and each of his heirs, executors, administrators, attorneys, and devisees, does hereby release and forever discharge the Signal Lake Partners and all of their parent companies, subsidiaries, affiliates, divisions, predecessors, successors, agents, representatives, officers, directors, employees, volunteers, shareholders, members, insurers, heirs, assigns, benefit plans, plan trustees, and plan administrators, past and present, and their attorneys and all persons acting by, through, under, or in concert with them or any of them (the "Released Parties"), of and from any and all claims, causes of action, suits, debts, liens, contracts, judgments, agreements, promises, liabilities, claims, demands, damages, losses, costs, or expenses of any nature whatsoever, known or unknown, fixed or contingent (hereafter called "claims"), which Yaeger now has against the Released Parties, or any of them, by reason of any matter, event, act, omission, cause, or thing whatsoever, from the beginning of time to through the date of this Agreement, including, but not limited, any and all claims relating or arising out of any claim for remuneration, compensation, benefits, or deferred compensation, including, but not limited to, all claims arising out of, based upon, or relating to the Lake County Lawsuit and the 2016 Lawsuit, including all claims which were or could have been asserted in the 2016 Lawsuit, and claims for attorney's fees.

(b) Without limiting the generality of the foregoing, the claims released in this Agreement include(s) any claims arising out of, based upon, (i) the claims alleged in the 2016 Lawsuit; (ii) employment discrimination; (iii) any tort claims, including wrongful discharge, retaliation, intentional or negligent infliction of emotional distress, breach or interference with an express or implied contract, duty, promise, term, or condition, fraud, promissory estoppel, violation of public policy, loss of consortium, invasion of privacy, false light, negligence, intentional tort, breach of express or implied contract, defamation, alter ego, or fraudulent conveyance; (iv) any violation or alleged violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, as amended, the Fair Labor Standards Act, the Employee Income Retirement Security Act, the Americans with Disabilities Act, the Family Medical Leave Act, the Consolidated Omnibus Budget Reconciliation Act, the Ohio Minimum Fair Wage Standards Act, the Ohio Civil Rights laws, the Ohio Workers' Compensation Act; (v) any claim relating to or arising under any other local, state or federal statute, regulation, rule or principle of common law. This Release extends to any and all administrative charges whether before the Equal Employment Opportunity Commissions, the Ohio Civil Rights Commission, or Department of Labor, to which Yaeger is currently a party.

(c) Notwithstanding anything to the contrary set forth above, the parties expressly acknowledge and agree that the release contained in this Paragraph 9 is not intended to apply the obligations of the parties set forth in this Agreement.

4



(d) To the extent permitted by law, Yaeger waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action, or proceeding based on such a claim in which any of the Released Parties is a party.

(e) <u>Non-Interference with Governmental Agencies</u>. Nothing in this Agreement, including, without limitation, this general release of claims, prohibits or prevents Yaeger from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency. However, to the maximum extent permitted by law, Yaeger agrees that if such an administrative claim is made or investigation occurs, he shall not be entitled to recover any individual monetary relief or other individual remedies, it being understood that the settlement amount being provided under this Agreement constitutes full, fair, and final consideration relating to any and all claims Yaeger had or may have had against the Signal Lake Parties or the Released Parties.

10. Yaeger affirms that other than the lawsuits described in this Agreement, he has not filed, caused to be filed, and presently is not a party to any claim, lawsuit, administrative charge, or other proceeding against the Signal Lake Parties or any Released Party. Yaeger affirms that he has not been retaliated against for reporting any allegations of wrongdoing or inappropriate conduct by any Signal Lake Party or Released Party, including any allegations of corporate, accounting, or financial fraud. Yaeger affirms that he is not aware of any compliance issues relating to this Signal Lake Parties or the Released Parties. If Yaeger is aware of any such issues, he affirms that such issues have been reported to the appropriate Signal Lake Party or Released Party in accordance with the applicable policy.

11. Yaeger represents and warrants that there has not been and there will be no assignment, subrogation or other transfer of any interest in any of the released claims. Yaeger agrees to indemnify and hold the released parties, and each of them, harmless from any liability, claims, demands, costs, expenses and attorneys' fees incurred by the released parties, or any of them, as a result of any person asserting any such assignment or transfer any rights to the released claims under any such assignment or transfer.

12. Notwithstanding anything to the contrary, Signal Lake Parties agree that there shall be no discrimination or retaliation of any kind against Yaeger or against any person because of opposition to any practice deemed illegal under the Age Discrimination in Employment Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Equal Pay Act, as amended, or Ohio statutes prohibiting employment discrimination, as a result of the termination of Yaeger's employment or for giving testimony, assistance or participating in any manner in an investigation, proceeding or hearing under the aforementioned Acts.

5



13. Yaeger intends that this Agreement is final and complete and therefore shall bar each and every claim and cause of action specified, whether known or unknown to him at the time of execution of this Agreement. As a result, Yaeger acknowledges that he might later discover, pre-existing claims, or facts in addition to or differ from those which Yaeger now knows or believes to exist with respect to the subject matters of this Agreement and which, if known, or suspected at the time of execution of this Agreement, may have materially affected this Agreement. Nevertheless, Yaeger hereby waives any right, claim, or cause of action that might arise as a result of such different or additional claims or facts.

14. <u>Confidentiality</u>. To the extent permitted by the Court, the parties agree that the existence of this Agreement and the terms of this Agreement are and shall forever remain strictly confidential. The parties promise not divulge, disclose, communicate, disseminate, or publicize or cause or permit to be disclosed, communicated, disseminated, or publicized, either directly or indirectly, specifically or generally, whether by act or omission, any term of this Agreement to any person, business organization, corporation, association, governmental agency, or any other entity, except as follows:

(a) The parties may state that the lawsuit has been settled to the mutual satisfaction of the parties;

(b) The parties may disclose the terms of this Agreement: (1) to their spouses; (2) to the extent necessary to report income to appropriate taxing authority; (3) to communicate with their attorneys or agents as is necessary for obtaining legal and/or financial planning advice, except that the attorney or financial agent shall not raise or disclose any term of this Agreement in any administrative or legal action of any kind; (4) in response to any order of court of competent jurisdiction or response to any discovery request pursuant to state or federal rules of civil procedure or a subpoena issued by a state or federal court or governmental agency. The parties agree that, in order to protect the confidentiality of this Agreement and the mutual interests of the parties, the monetary settlement benefits contained in Paragraph 3 of this Agreement will be redacted on any and all copies filed with the Court. The parties will provide an original, un-redacted copy to the court for in-camera review.

15. <u>Non-Disparagement</u>. The parties agree not to defame, disparage, or demean each other in any manner whatsoever and through any medium. Yaeger acknowledges that breach of this paragraph will result in significant and continued harm to the disparaged party and that he agrees that if he disparages a party he will forfeit and pay the disparaged party the amounts he received under Paragraph 3 of this Agreement. Yaeger acknowledges that the foregoing is not a penalty, is reasonable, and solely serves as a deterrent against future disparaging statements.

16. <u>Neutral Reference and Reference Letter</u>. The Signal Lake Parties agree that in the event any of them are contacted by a prospective employer of Yaeger, they shall only provide a neutral reference identifying the nature of Yaeger's business

6

relationship and the dates of his engagement with the Signal Lake Parties. The Signal Lake Parties further agree that they shall provide Yaeger with a reference letter, signed by Barton Stuck, which is attached hereto as Exhibit B.

17. By entering into this Agreement, the Signal Lake Parties do not admit the breach of any contractual promises or other promises to Yaeger, and do not admit to the violation of any federal, state or local or other statute or law, including, but not limited to, those referred to in this Agreement, and any claims, breaches or violations are hereby specifically denied. The payment of the sums referenced in this Agreement, the performance of any promises identified in this Agreement, and the execution or performance of any terms of this Agreement, shall not constitute or be construed as an admission of any wrongdoing whatsoever by the Signal Lake Parties or Yaeger.

18. This Agreement and its Attachments constitute the entire understanding between Yaeger and the Signal Lake Parties relating to the subject matter contained herein and this Agreement supersedes any previous agreement(s) that may have been made in connection with Yaeger's employment with Signal Lake Parties, except insofar as such agreement(s) concern Yaeger's obligations with or in regard to competing with Signal Lake Parties Systems, Inc. or Yaeger's obligations with regard to Signal Lake Parties' trade secrets, proprietary or other confidential information belonging to Signal Lake Parties, which obligations are not modified, amended or terminated by this Agreement, and which continue after the severance date. This Agreement may not be changed, modified or altered without the express written consent of Yaeger and an officer of Signal Lake Parties.

19. The Signal Lake Parties' failure to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver of, or deprive Signal Lake Parties of their right thereafter to insist upon strict adherence to that term or any other term of this Agreement. To be effective, any waiver must be in writing and signed by each of the Signal Lake Parties and their duly authorized manager or member.

20. This Agreement and its Attachments constitute the entire understanding between Yaeger and the Signal Lake Parties relating to the subject matter contained herein and this Agreement supersedes any previous agreement(s) that may have been made between or among Yaeger and the Signal Lake Parties. This Agreement may not be changed, modified or altered without the express written consent of Yaeger and an officer of Signal Lake Parties.

21. The parties agree that this Agreement shall be construed in accordance with the laws of the State of Ohio and that the United States District Court for the Northern District of Ohio shall retain jurisdiction to enforce the terms of this Agreement.

22. <u>Joint Participation</u>. The parties participated jointly in the negotiation and preparation of this Agreement and each party had the opportunity to obtain the advice of legal counsel and to review, act upon, and redraft this Agreement. Accordingly, as

agreed that no rule of constructions shall apply against any party or in favor of any other party. This Agreement shall be construed as if the parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party in favor of the other(s).

23. In the event that any party, or any person, entity or organization, breaches any of the promises made in this Agreement, and another party defends or pursues any charge, suit, complaint, claim or grievances as a result thereof, the breaching party shall be liable to the non-breaching party for all damages, attorney's fees, expenses and costs (including discovery costs) incurred by it in defending or pursuing the same.

24. In the event that any provision of this Agreement is found by any court or any governmental agency to be unlawful or unenforceable, Signal Lake Parties has the right to require both parties to continue complying with the remaining provisions of this Agreement.

25. The Parties acknowledge that they have carefully read this Agreement, that they fully understand all of its terms and contents, that they has been given the opportunity, and have been advised to consult with an attorney of their choice prior to the execution of this Agreement, that each has consulted with an attorney of their choosing and that the Parties deliberated over this Agreement and voluntarily agree to be bound by its terms.

26. Yaeger understands that the offer made to Yaeger by this Agreement remains open for twenty-one (21) days from the date Yaeger first received this Agreement, which date was on or before October 31, 2017. If Yaeger elects to execute this Agreement prior to the expiration of this 21 day period, Yaeger warrants that Yaeger has done so knowingly and voluntarily pursuant to 29 U.S.C. §626(f). Yaeger has seven (7) days following the execution of this Agreement to revoke said Agreement. This Agreement shall not be effective or enforceable until this 7 day revocation period has expired. If Yaeger revokes, Yaeger shall do so in writing and shall return this document to Signal Lake Parties and all the terms shall be void and of no further effect. Any notice under this Paragraph shall be sent or delivered to:

**Signal Lake Management, LLC**
**Attn: Barton Stuck**
**606 Post Road East, Suite 667**
**Westport, CT 06880**

27. <u>Judicial Approval</u>. The effectiveness of this Agreement is contingent upon the Court granting of the parties' Joint Motion for Approval of the Settlement Agreement and Agreed Judgment Entry attached as Exhibits "C" and "D," except that if the Court rejects either the Joint Motion or the Agreed Judgment Entry, the parties shall jointly resubmit the Joint Motion for Approval and/or Agreed Judgment Entry with all

objectionable portions stricken to the Court within three (3) business days of receiving Notice of the Court's rejection.

28. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed to constitute an original document, but all of which are deemed to be one and only one Settlement Agreement. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing the Agreement (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

IN WITNESS WHEREOF, the signatories have sworn to and executed this Agreement as of the date and year first above written and it shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto.

Signed in the presence of:

_____
Chris Wild

_____
Hal Yaeger

Dated: _____, 2017

Signed in the presence of:

_____

SIGNAL LAKE MANAGEMENT, LLC

By: _____

Name (printed): _____

Title: _____

Dated: _____, 2017

Signed in the presence of:

_____

SIGNAL LAKE GENERAL PARTNER LLC

By: _____

Name (printed): _____

Title: _____

Dated: _____, 2017

Signed in the presence of:

_____  
_____ Barton Stuck  
Dated: 2 November, 2017